**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| AGSOUTH GENETICS, LLC, *et al.*, :<br>      Plaintiffs, :<br>v. :<br>GEORGIA FARM SERVICES, LLC, *et al.*, :<br>      Defendants. : | CASE NO.: 1:09-CV-186 (WLS) |

### ORDER

The Court orally ruled on the parties' pending motions: Defendant's Oral Motion to Strike Expert Testimony and the parties' Oral Motions for Judgments as a Matter of Law. The Court, as stated, enters this written order to fully state the reasons and basis of its oral rulings. For the following reasons, Defendant's Oral Motion for Judgment as a Matter of Law as to Plaintiffs' PVPA, trademark infringement, and false designation claims are **DENIED,** Plaintiffs' Oral Motion for Judgment as a Matter of Law as to Defendant's liability under the PVPA is **DENIED,** and Plaintiffs' Oral Motion for Judgment as a Matter of Law as to Defendant's tortious interference counterclaim is **GRANTED.** The oral rulings, by reference, are made a part of this written order.

### BACKGROUND

On July 23, 2009, Plaintiffs AGSouth Genetics, LLC ("AGSouth") and University of Georgia Research Foundation, Inc. ("UGARF") filed a Complaint against Defendant Georgia Farm Services, LLC ("GFS") and others in the Athens Division of this Court, alleging violations of the Plant Variety Protection Act ("PVPA") and the Lanham Act. (Doc. 1.) District Court Judge Clay D. Land granted a Motion to Change Venue on

1

December 9, 2009, and transferred the matter to this division. (Doc. 24.) Following discovery and an unsuccessful Motion for Summary Judgment by Plaintiffs, trial in this matter began on October 11, 2013. (Docs. 35, 109, 168.)

Among the witnesses tendered by Plaintiffs was Donald Davis, further tendered, and permitted to testify, as an expert witness. (Doc. 172.) Mr. Davis testified on the matter of damages under the PVPA. He testified that he had used a formula he authored to determine a reasonable royalty, purporting to use the factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 243 F. Supp. 500 (S.D.N.Y. 1965). Following this testimony, Defendant made an oral motion to strike the expert testimony, claiming that it did not comport with the requirements of Federal Rule of Evidence 702.

Defendant moved for a judgment as a matter of law on Plaintiffs' PVPA claim claiming that no evidence had been introduced to suggest that the protected seeds had been propagated, or that Defendant had the requisite knowledge for damages under the PVPA. Also, Defendant claimed that the evidence was insufficient to prove willfulness under the PVPA by clear and convincing evidence. Defendant argued that the expert's testimony should be stricken and, without the expert's testimony, there was no evidence in the record demonstrating damages.

Defendant moved for judgment as a matter of law on Plaintiffs' Lanham Act claims contending there was no evidence that the seeds were part of interstate commerce or to suggest likelihood of confusion, the marking requirement was not met, and no evidence of Lanham Act damages had been introduced. Plaintiffs moved for judgment as a matter of law as to PVPA infringement liability, claiming that counsel for Defendant's opening statement and Mr. Wingate's testimony at trial constituted admissions of PVPA infringement as to at least 320 bags of AGS 2000. Also, Plaintiffs

argued that they were entitled to judgment as a matter of law on Defendant's tortious interference claim because Plaintiffs' actions were privileged.

## DISCUSSION

### I. Motion to Strike Expert Testimony

#### A. Standard of Review

The Supreme Court made "abundantly clear" in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n.7, 597 (1993), that Federal Rule of Evidence 702 ("Rule 702") compels a District Court to perform the critical gatekeeping function concerning the admissibility of expert scientific evidence. Rule 702 requires the same gatekeeping function for the admissibility of technical expert evidence. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The District Court's gatekeeping function " 'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Frazier*, 387 F.3d at 1260 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)) (emphasis and alteration in original). Courts in the Eleventh Circuit "engage in a rigorous three-part inquiry" in determining the admissibility of expert testimony under Rule 702. *Id.* Trial courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand that evidence or to determine a fact in issue.

*Id.* (quoting *City of Tuscaloosa v. Harcros. Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

Regardless of the overlap among the three requirements of qualification, reliability, and helpfulness, "they remain distinct concepts and the courts must take care not to conflate them." *Id.* Furthermore, "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Id.* Ultimately, the reliability inquiry must be tied to the particular facts of the case. *Kuhmo Tire Co.*, 526 U.S. at 150 (internal citations omitted). Equally important to the gate-keeping function is a determination of whether the proposed testimony is relevant. *Daubert*, 509 U.S. at 591. Relevant testimony is that testimony that "logically advances a material aspect" of a party's case. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

A witness may be qualified as an expert by reason of knowledge, skill, experience, training, or education. FED. R. EVID. 702. Furthermore, "[d]isputes as to the strength of [a witness's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCurdy v. Ford Motor Co.*, No. 1:04-CV-155, 2006 WL 2793167, at *4 (M.D. Ga. Sept. 26, 2006) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). "Vigorous cross-examination, presentation of contrary evidence, and contrary instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001). The Court's role in addressing a *Daubert* motion "is not intended to supplant the adversary system or the role of the jury." *Allison*, 184 F.3d at 1311.

### B. Analysis

Defendant claims that Mr. Davis's methodology has not been accepted in the scientific community, will not assist the trier of fact, and is not the product of reliable

4

principles and methods.  Defendant argues that Mr. Davis did not link damages to the infringing acts, misinterpreted the law, and therefore produced an unreliable result.

Mr. Davis is a certified public accountant, licensed by the Arkansas, Kansas, and Missouri State Boards of Accountancy.  (Doc. 93-1 at 28.)  He graduated from the University of Central Arkansas with a Bachelor's Degree in Business Administration, with an emphasis in accounting in 1987.  (*Id.* at 29.)  He has worked in accounting since that time, specializing in, among other things, agriculture.  (*Id.*)  He has previously testified in matters involving the PVPA.  (*Id.* at 31.)  Based on this background and experience, the Court finds that Mr. Davis is qualified to testify as an expert as to damages under the PVPA.  *See* FED. R. EVID. 702.

Mr. Davis claims that he based his reasonable royalty calculation on the fifteen factors deemed relevant by *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 243 F. Supp. 500 (S.D.N.Y. 1965), referred to as the *Georgia-Pacific* factors.  Mr. Davis started his analysis based on a retail value of $18.00 per bag of AGS 2000, and asserts that the retail value is based on the assumption that the parties are willing to settle disputes that arise in relation to that price.  When there is no such meeting of the minds, Mr. Davis's reasoning continues, the reasonable royalty must compensate Plaintiffs for the damages suffered in connection with the illegal sale, offer for sale, exchange, or conditioning of AGS 2000.  Mr. Davis concludes that, "at minimum Plaintiffs damages, or minimum royalty is equal to the additional gross value gained illegally as compared to generic public or lesser value seed," which is $815.40 per bag.  (Doc. 93-1 at 15-16.)  Mr. Davis asserts that this number does not take into consideration the nature of seed which permits repeated and exponential infringements.  (*Id.* at 16.)

5

Mr. Davis arrived at the reasonable royalty of $815.40 by determining the value of a bag of wheat seed other than AGS 2000 and the value of a bag of AGS 2000, based on the expected yields of those seeds in the relevant geographical region. The expected yield of a bag of wheat other than AGS 2000 was determined by Mr. Davis to be, on average, 59.5 bushels per acre, at one acre per bag. The alleged expected yield of a bag of AGS 2000 wheat was determined to be an average of 104.8 bushels, which is an additional 45.3 bushels per acre than that produced by the average wheat seed that is not AGS 2000.

Defendant argues that this analysis should be excluded from consideration by the jury because (1) Mr. Davis' theory has never been accepted by any circuit court, (2) the theory has never been published, (3) Mr. Davis was denied the opportunity to conduct a seminar on his theory, and (4) the theory is contrary to controlling law, namely *Georgia-Pacific* because the reasonable royalty rate must be based on a hypothetical negotiation between a *willing* licensor and licensee. The Court notes that these grounds are somewhat different from the grounds for exclusion Defendant raised in its earlier Motion to Exclude Expert Testimony. (Doc. 77 at 6-7.)

First, whether Mr. Davis' theory has been accepted by another court, published, or presented goes to whether the theory would be helpful to the jury. FED. R. EVID. 702(a); *Daubert*, 509 U.S. at 593. When actual damages cannot be proven, the proper measure of damages is a reasonable royalty. "[A] reasonable royalty is often determined on the basis of a hypothetical negotiation, occurring between the parties at the time the infringement began." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011) (citing *Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d 858, 869 (Fed. Cir. 1993)). At minimum, to be admissible under *Daubert*, an expert's reasonable royalty calculation

6

under the PVPA must "tie a reasonable royalty base to the facts of the case at issue." *Id.* at 1315; *see Daubert*, 509 U.S. at 591. The *Georgia-Pacific* factors have been accepted as "valid and important factors in the determination of a reasonable royalty rate." *Uniloc*, 632 F.3d at 1317-18.

Mr. Davis' theory uses the *Georgia-Pacific* factors. Although he may have put heavier weight on some factors in relation to the weight he assigned other factors, such does not necessarily render his opinion inadmissible. As this Court has previously held, "the objections Defendant[] raise[s] to Davis' testimony on the issue of damages are in essence matters for cross-examination and do not present a basis to exclude the testimony." (Doc. 110 at 4.) The Court concludes, as it has previously, Mr. Davis's testimony is admissible under *Daubert* because it relies primarily on the *Georgia-Pacific* factors, which has been deemed an acceptable methodology by the Federal Circuit. (*Id.* at 5.) Davis' application of those factors is not so extreme and so without logic as to render his opinion violative of *Daubert* and Rule 702. However, it remains subject to attack by cross-examination.

The Court notes that the analysis is not particularly complicated, and therefore is not likely to confuse the jury. The expert testimony will help, from Plaintiffs' view, to explain "matters that are beyond the understanding of the average lay person," as the average person is not likely to be aware of the issues evaluated in Mr. Davis's report. *United States v. Henderson*, 409 F.3d 1293, 1304 (11th Cir. 2005). The testimony's probative value is not "substantially outweighed by its potential to confuse or mislead the jury." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). The jury is fully capable of understanding the theory and weighing and including it with all the other evidence, and Defendant has the opportunity to subject it to a thorough and sifting

7

cross-examination. The witness's testimony could assist the jury in understanding the different *Georgia-Pacific* factors, how they relate and interplay in determining a reasonable royalty. Accordingly, Defendant's Oral Motion to Strike Expert Testimony is **DENIED.**

## II. Judgment as a Matter of Law

### A. Standard of Review

Judgment as a matter of law may be entered against a party "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 113, 149 (2000) (internal citation omitted). The standard for granting a motion for judgment as a matter of law echoes that for summary judgment. *See id.* at 151. Thus, a motion for judgment as a matter of law may be granted based upon the evidence in the record, which shows that there is "no genuine issue as to any material fact and that the moving party is entitled to [judgment as a matter of law]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is " 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646. Judgment as a matter of law is appropriate when the "nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *See Celetox*, 477 U.S. at 323.

To avoid judgment as a matter of law, the nonmoving party must "put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). "[I]f reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions," judgment as a matter of law will be denied. *Id.* (internal citation omitted). On a motion for judgment as a matter of law, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23.

**B. Analysis**

    **i.  Plaintiffs' claim under 7 U.S.C. § 2541[1]**

Plaintiffs claim they have raised a jury question as to whether Defendant has violated 7 U.S.C. § 2541(a)(1), (a)(6), (a)(8), and (a)(10), whether Defendant did so willfully thus entitling Plaintiffs to enhanced damages, and PVPA damages. Defendant claims it is entitled to judgment as a matter of law because (1) no evidence has been introduced to demonstrate it had the notice required by 7 U.S.C. § 2567, (2) no evidence has been introduced to suggest any of the seeds were propagated, (3) no evidence has been introduced to demonstrate the recklessness required for a showing of willfulness, and, (4) without benefit of the expert opinion, the jury has no evidence upon which it may base a damages finding with the requisite certainty. Because the Court has ruled that the expert opinion is admissible, only the first three grounds of contention will be considered.

---

[1] The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals under the PVPA, and its precedent therefore controls for all substantive purposes. 7 U.S.C. § 2461; *Delta & Pine Land Co. v. Sinkers Corp.*, 177 F.3d 1343, 1350 (Fed. Cir. 1999).

9

To get its claims under 7 U.S.C. § 2541 to the jury on the issue of infringement, Plaintiffs must demonstrate that Defendant

> without authority ... in the United States, or in commerce which can be regulated by Congress or affecting such commerce, prior to expiration of the right to plant variety protection but after either the issue of the certificate or the distribution of a protected plant variety with the notice under [7 U.S.C. § 2567] (1) s[old] or market[ed] the protected variety, or offer[ed] it or expose[ed] it for sale, deliver[ed] it, ship[ped] it, consign[ed] it, exchange[d] it, or solicit[ed] an offer to buy it, or [otherwise transferred] title or possession of it; (6) dispense[d] the variety to another, in a form which can be propagated without notice as to being a protected variety under which it was received; (8) stock[ed] the variety for [either of these purposes]; or (10) instigate[d] or actively induce[d] performance of any of the foregoing acts."

7 U.S.C. 2541(a)(1), (a)(6), (a)(8) & (a)(10).

At trial, Plaintiffs introduced evidence that would support a finding that Defendant's employees loaded bags of AGS 2000 wheat, marked as such, into trucks owned by Defendant, which were parked on land owned by Defendant. The evidence also supports a finding that Defendant sold, transported, dispensed, and stocked AGS 2000. William Douglas Wingate, representative for Defendant, admitted that his company transported bags of AGS 2000 to Terrell Peanut Company on behalf of Edward Parker. Although Defendant claims that such actions were at the direction of a third party, such a fact does not serve as a defense to PVPA infringement.

The Court notes that Plaintiffs are not entitled to judgment as a matter of law as to PVPA liability. "When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission." *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) (citation omitted). Statements made during the course of a trial are not judicial admissions because they are not contained in pleadings, a stipulation, or a

response to a request for admission.  *See Carl E. Woodward, LLC v. Acceptance Indem. Co.*, No. 1:09-cv-781-LR-RHW, 2011 WL 98404, at *4 (S.D. Miss. Jan. 12, 2011).

For an infringer to be held liable for damages, the infringing bags must have been labeled as a protected variety, or the infringer must have had "actual notice or knowledge that propagation is prohibited or that the variety is a protected variety."  7 U.S.C. § 2567.  Plaintiffs have introduced evidence that the bags were marked as protected and that Mr. Wingate at least intimated to an investigator that the AGS 2000 Defendant was selling was certified.  This evidence is sufficient for a jury to infer that Defendant, at the relevant time, had actual knowledge that the variety was protected.

Neither actual propagation nor intent to propagate is required for violation of the PVPA.  *See generally* 7 U.S.C. § 2541.  The first line of an opinion that interpreted the version of the PVPA before the 1994 amendments noted that the PVPA "protects owners of novel seed varieties against unauthorized sales of their seed for replanting purposes." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 181 (1995).  That case, however, involved a discussion of an exception, removed in the 1994 amendments, which permitted farmer-to-farmer transactions involving saved seeds.  *See also Delta & Pine Land Co. v. Sinkers Corp.*, 177 F.3d 1343, 1347 (Fed. Cir. 1999); *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 WL 1833016, at *3 (S.D. Ala. May 13, 2011).  The Court will not read an additional requirement into the plain language of 7 U.S.C. § 2541 based on dicta from a case based on a previous version of that statute.

The Court also finds that sufficient evidence has been introduced to support a jury finding as to willfulness.  A finding of willfulness is necessary to enhance statutory damages under the PVPA.  *See In re Seagate Technology, LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007).  To make such a showing, Plaintiffs must demonstrate by clear and

11

convincing evidence that Defendant "acted despite an objectively high likelihood that its actions constitute infringement of a valid [PVPA certificate]." *Id.* at 1371. In addition, this objective risk must have been "known or so obvious that it should have been known" by Defendant. *Id.* The Court finds that Plaintiffs have introduced sufficient evidence to raise a jury question as to recklessness. As mentioned above, the investigator recorded Mr. Wingate's intimation that the AGS 2000 wheat seed Defendant was selling was certified. He further explained that the AGSouth wheat seed was some of the best on the market. Also, testimony was introduced that informational booklets outlining the protected nature of AGS 2000 were found in Mr. Wingate's possession on Defendant's premises. These circumstances sufficiently evidence Defendant's knowledge that a license was necessary for the lawful dispensation of AGS 2000, and doing so without such a license was attended by a high likelihood of infringing on the licensor's rights to create a question of fact for the jury on the question of willfulness.

Based on the foregoing, the Court finds that Plaintiffs have introduced sufficient evidence to raise a jury question as to infringement, willfulness, and damages under the PVPA, but the evidence is not such as to entitle Plaintiffs to judgment as a matter of law as to PVPA liability. To do so, the Court would be required to make impermissible credibility determinations. Accordingly, Defendant's Oral Motion for Judgment as a Matter of Law as to Plaintiffs' PVPA claim and Plaintiffs' Oral Motion for Judgment as a Matter of Law as to Defendant's PVPA liability are **DENIED.**

### ii. Plaintiff AGSouth's claim under 15 U.S.C. § 1114

Plaintiff AGSouth claims it has produced sufficient evidence to raise a jury question as to whether Defendant has violated the trademark infringement provision of

the Lanham Act, 15 U.S.C. § 1114. Defendant claims that there is no evidence to support a finding that its use of the mark caused a likelihood of confusion, and no evidence supports a finding that the marking requirement of 15 U.S.C. § 1111 was met. 15 U.S.C. § 1114 provides in pertinent part:

> (1) Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods of services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … shall be liable in a civil action by the registrant.

15 U.S.C. § 1114.

To succeed on this claim, Plaintiff AGSouth must prove that (1) it had trademark rights in the mark or name at issue, and (2) Defendant adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *Suntree Technologies, Inc. v. Ecosence Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (citing *Tana v. Dantanna's*, 611 F.3d 767, 772-73 (11th Cir. 2010)). Typically, "the outcome turns on the likelihood of confusion among prospective customers." *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252 (4th Cir. 1970). Factors relevant to this determination are distinctiveness of the mark, similarity of the two marks, similarity of the goods or services that the marks purport to identify, the defendant's intent in adopting the same or similar mark, and actual confusion. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996). Where the parties are not competitors, "the issue of infringement hinges on the likelihood of confusion about the source or sponsorship of the defendant's goods and services." *Communications Satellite*, 429 F.2d at 1252. (citations omitted).

13

Plaintiff AGSouth complains that wheat seed was sold in bags bearing the name AGS 2000, but the seed contained therein did not meet the quality standards of licensed and controlled AGS 2000. In support of this contention, Plaintiff has introduced evidence that testing of bags of seeds marked AGS 2000 obtained by an investigator revealed that not all seeds in the bags so marked were AGS 2000. Where products are sold under a particular mark, but the products are not consistent with the quality demanded by the entity with the rights to the mark, liability may lie for Lanham Act trademark infringement. *See, e.g., Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584, 590 (D.S.C. 2011). Thus, Plaintiff argues, infringement has been demonstrated.

The Court finds that the evidence, in a light most favorable to Plaintiff AGSouth, supports a jury finding that a consumer could be confused and attribute the lower quality seeds contained in the bags of wheat seed sold by Defendant marked AGS 2000 to Plaintiff. "The role of a trademark is its assurance of quality, and its value depends on the consistent quality of the product that bears the mark." *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d 1356, 1369-70 (Fed. Cir. 2003). Plaintiff AGSouth held the rights to AGS 2000, and Mr. Clements testified that customers who bought and conducted testing on those seeds would find that the bags did not in fact contain only AGS 2000 seeds. This testimony is corroborated by laboratory testing of the contents of the bags labeled AGS 2000 in Defendant's possession. Selling bags of seed marked AGS 2000 containing a mixture consisting of seeds that are not AGS 2000 could certainly cause consumer confusion, and cause those consumers to attribute the lower quality to Plaintiff AGSouth. Although no actual confusion has been demonstrated, *actual* confusion is only one factor in the determination of the likelihood of confusion.

Furthermore, the Court finds that the marking requirement has been met. 15 U.S.C. § 1111 requires that notice be given that the mark was registered with the United States Patent and Trademark Office by, among other means, "displaying with the mark ... the letter R enclosed within a circle." Defendant claims that this requirement was not met because "the letter R enclosed within a circle" was not directly adjacent to the mark "AGS." The Court rejects Defendant's assertion that the placement of the "®" was improper and ineffective under 15 U.S.C. § 1111. The purpose of that provision is to ensure any infringer had notice that the mark was a registered trademark before holding such person liable for infringement. *See Admiral Corp. v. Sewing Mach. Sales Corp.*, 156 F. Supp. 796, 798 (S.D.N.Y. 1957). The "®" was placed in such a manner on the bag containing AGS 2000 that any observer would be placed on sufficient notice of the protected status of the mark. Additionally, for the reasons stated above, sufficient evidence supports a finding that Defendant had actual knowledge of Plaintiff AGSouth's trademark.

Accordingly, Defendant's Oral Motion for Judgment as a Matter of Law as to Plaintiff AGSouth's Trademark Infringement Claim is **DENIED.**

### iii.     Plaintiff AGSouth's claim under 15 U.S.C. § 1125

Plaintiff AGSouth claims that it has introduced sufficient evidence to raise a jury question as to whether Defendant is liable for false designation of origin under the Lanham Act, 15 U.S.C. § 1125.[2] That provision provides, in pertinent part:

---

[2] Trademark infringement under 15 U.S.C. § 1114 permits recovery for infringement of a *registered* trademark. False designation of origin under 15 U.S.C. § 1125 permits recovery for improper use of registered *and* unregistered trademarks. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1237 (10th Cir. 2013).

> (a) Civil Action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of fact which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

Plaintiffs claim that Defendant is liable for false designation of origin because some of the bags containing AGS 2000 were labeled "E & I Diversified Farm Service." In essence, Plaintiffs are claiming that Defendant wrongfully misrepresented Plaintiffs' goods as goods originating from someone other than Plaintiffs. This fits closest to a theory of false designation of origin referred to as "reverse palming off." *See Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). To prove such a claim, Plaintiffs must prove that (1) the product at issue originated with Plaintiffs, (2) origin of the product was falsely designated by the Defendant, (3) the false designation of origin was likely to cause consumer confusion, and (4) Plaintiffs were harmed by Defendant's false designation of origin. *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006) (citing *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995)).

Plaintiff AGSouth does not allege that the origin of the product was falsely designated by Defendant. Instead, Plaintiff claims that the work was falsely designated by E & I Diversified Farm Service. If the bags of seed had been labeled "Georgia Farm Services AGS 2000," Plaintiff would have clearly asserted a valid false designation of origin claim. *See Syngenta Seeds*, 457 F.3d at 1278. As the evidence does not support

this finding, the question for the Court is essentially whether Defendant's act of selling the bags labeled E & I Diversified Farm Service is sufficient to create a jury question on Plaintiff's false designation of origin claim. The Court finds that the plain language of 7 U.S.C. § 1125(a)(1)(A) supports an affirmative answer to this question. *See Lorillard Tobacco Co. v. Ahmad's Pizza, Inc.*, 866 F. Supp. 2d 872, 878 (N.D. Ohio 2012).

Additionally, the Court notes that sufficient evidence supports a finding of likelihood of confusion and that the marking requirement has been met for the reasons stated above. Accordingly, Defendant's Oral Motion for Judgment as a Matter of Law as to Plaintiffs' false designations claim is **DENIED.**

### iv.   Defendant's tortious interference claim

Defendant argues that it has made a claim for tortious interference with business relations by providing at least some evidence that Plaintiffs refused to settle the case on fair and reasonable terms and refused to grant Defendant licenses for other varieties of seeds in an effort to extract a high settlement from Defendant in the instant matter. Plaintiffs claim they are entitled to judgment as a matter of law as to Defendant's tortious interference counterclaim.

To make out a claim for tortious interference under Georgia law, counterclaimant GFS must introduce sufficient evidence to raise a jury question that (1) AGSouth and/or UGARF acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with GFS, (4) for which GFS suffered some financial injury. *Walker v. Gowen Stores LLC*, 322 Ga. App. 376, 376 (2013) (citing *Integrated Micro Sys. Mfg. v. Rule Indus.*, 264 Ga. 295 (1994)). "The malice element of the cause of action 'is broadly construed to encompass any unauthorized interference or any

interference without legal justification or excuse.' " *Id.* (citations omitted). "It is generally held that no liability for [intentional interference with business relations] exists where the breach is caused by the exercise of an absolute right—that is, an act which a [person] has a definite legal right to do without any qualification." *Russell Corp. v. BancBoston Financial Co.*, 209 Ga. App. 660, 663 (1993) (citing *Schaeffer v. King*, 223 Ga. 468 (1967)).

Article I, Section 8, Clause 8 of the United States Constitution empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." The foundation of intellectual property rights is the right to exclude others. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985). "A trademark owner has the absolute right to prevent others from affixing the mark with neither license nor quality control by the trademark owner." *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d 1356, 1369-70 (Fed. Cir. 2003). As the trademark holder, AGSouth had the absolute right to refuse to grant GFS intellectual property licenses. Whether AGSouth harbored ill motives in making this determination is irrelevant.

The Court notes that Defendant asserted that it is not complaining that the licenses were not issued to it, but rather that Plaintiffs refused to settle the case. The Court disagrees with this characterization of the facts. Defendant complains that its business relationships were harmed because it was unable to sell popular peanut varieties since Plaintiffs refused to grant licenses to Defendant for those varieties. Plaintiffs' reason for doing so may have been related to their refusal to settle the case. But the crux of the harm to Defendant arises from Plaintiffs' refusal to grant it licenses. Refusal to settle alone did not interfere with Defendant's business relationships. Even if

18

the harm emanated from Plaintiffs' refusal to settle, such a decision was Plaintiffs to make, without qualification or reason.

Furthermore, Defendant introduced no particularized evidence of the business relationships that were harmed by Plaintiffs' actions. Without such evidence, Plaintiffs are entitled to judgment as a matter of law. *See Am. S. Ins. Group, Inc. v. Goldstein*, 291 Ga. App. 1, 12 (2008). To the extent the exercise of a right could ever possibly be the basis of an action for tortious interference, Defendant has failed to present such facts. Accordingly, Plaintiffs' Oral Motion for Judgment as a Matter of Law is **GRANTED.**

## CONCLUSION

Defendant's Oral Motion for Judgment as a Matter of Law as to Plaintiffs' PVPA, trademark infringement, and false designation of origin claims are **DENIED**, Plaintiffs' Oral Motion for Judgment as a Matter of Law as to Defendant's PVPA liability is **DENIED,** and Plaintiffs' Oral Motion for Judgment as a Matter of Law as to Defendant's tortious interference counterclaim is **GRANTED.**

**SO ORDERED**, this   24th   day of October, 2013, *Nunc pro tunc* October 18, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**