IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| AGSOUTH GENETICS, LLC, and UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CASE NO.: 1:09-CV-186 (WLS) |
| GEORGIA FARM SERVICES, LLC, | : : | |
| Defendant. | : : | |

**ORDER**

Presently pending before the Court is Defendant's Post-Trial Motion for Judgment as a Matter of Law (Doc. 204). For the following reasons, Defendant's Post-Trial Motion for Judgment as a Matter of Law (Doc. 204) is **DENIED.**

**BACKGROUND**

Following a six-day trial, a jury rendered a verdict finding Georgia Farm Services ("GFS") liable for willful infringement of Plaintiffs' Plant Variety Protection Act ("PVPA") Certificate in violation of the PVPA. (Doc. 186.) On October 22, 2013, the jury found that Plaintiffs were entitled to a reasonable royalty award of $125.00 per bag of AGS 2000, multiplied by the 15 bags that the jury found to be infringing, for a total reasonable royalty award of $1,875.00. (*Id.*) The jury found in Defendant's favor as to Plaintiff AGSouth Genetics, LLC's ("AGSouth") Lanham Act claim. (*Id.*)

Before the case went to the jury, Defendant made an oral motion for judgment as a matter of law. (*See* Doc. 181.) Defendant's Motion was based on its contention that (1) no evidence was introduced to demonstrate that it had the requisite notice under 7 U.S.C. § 2567 to give rise to PVPA liability; (2) no evidence was introduced to suggest that the variety had actually been propagated as purportedly required by 7 U.S.C. §

1

2541(d); (3) insufficient evidence was introduced to support a jury finding of willfulness; and (4) without benefit of the expert opinion—which Defendant claimed should have been excluded—the jury had no evidence upon which it could base a damages finding with the requisite certainty. (*Id.* at 9.)

On October 24, 2013, the Court issued a written opinion disposing of the various arguments raised in Defendant's oral Motion. (*See id.*) The Court held that there was sufficient evidence to support a finding that Defendant had "actual notice or knowledge that propagation is prohibited or that the variety is a protected variety" as required by 7 U.S.C. § 2567 because there was evidence that the bags were marked as protected and "Mr. Wingate at least intimated to an investigator that the AGS 2000 Defendant was selling was certified." (*Id.* at 11.) Next, the Court held that "[n]either actual propagation nor intent to propagate is required for violation of the PVPA." (*Id.*) As such, the Court found that the asserted lack of evidence of actual propagation of the protected variety was not fatal to Plaintiffs' PVPA claim. (*Id.*) The Court also held that Plaintiffs met their burden by clear and convincing evidence that Defendant's infringement was willful based on an electronic recording of Mr. Wingate stating that the AGS 2000 wheat seed that Defendant was selling was certified and some of the best on the market, and informational booklets that were found in Defendant's office that referenced the seed and its protected nature. (*Id.* at 12.) Lastly, the Court found that Plaintiffs' expert's testimony could properly reach the jury, thus mooting Defendant's final argument. (*Id.* at 9.)

On November 29, 2013, Defendant filed its Post-Trial Motion for Judgment as a Matter of Law and Memorandum of Supporting Authorities. (Doc. 204.) Therein, Defendant claims that it is entitled to judgment as a matter of law because (1) there was no evidence to suggest that the infringing transactions did not involve further propagation as purportedly required by 7 U.S.C. § 2541(d); (2) Plaintiffs' sampling method precluded a finding of infringement of fifteen bags without speculation and guesswork; (3) the fifteen bags found as infringing by the jury were authorized and therefore did not violate the PVPA; (4) the jury's willfulness finding is not supported by

clear and convincing evidence; (5) the jury's damages finding was impermissibly based on speculation and guesswork; and (6) the jury's damages award was impermissibly punitive. (*See id.*) On December 20, 2013, Plaintiffs filed their Response. (Docs. 212 & 213.) On January 6, 2014, Defendant filed its Reply. (Doc. 216.) As such, the referenced Motion is ripe for review. *See* M.D. Ga. L.R. 7.3.1.

## ANALYSIS

Under Federal Rule of Civil Procedure 50, a court should render "judgment as a matter of law only where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-movant].' " *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1274 (Fed. Cir. 2006) (quoting Fed. R. Civ. P. 50). The Court must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148-51 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### I. Exemption to PVPA liability at 7 U.S.C. § 2541(d)

Defendant bases all of its arguments regarding infringement of the PVPA on its assertion that "[t]he only set of 15 bags that the evidence could have allowed the jury to find infringing were the 15 bags sold to Plaintiffs' private investigator, Zelotis Wofford." (Doc. 204 at 4.) Defendant claims that the evidence is undisputed that those bags were not used for actual propagation of the variety and therefore are not infringing under the plain language of 7 U.S.C. § 2541(d). (*Id.* at 4-5.) Plaintiffs argue that there is no basis to conclude that the 15 bags that the jury found infringing were the bags that were sold to Mr. Wofford. (Doc. 211 at 5.) Plaintiffs maintain, however, that, even if the infringing bags were those sold to Mr. Wofford, the PVPA does not require a showing of actual propagation. (*Id.* at 6-7.) Instead, Plaintiffs assert that § 2541(d) only exempts actions taken with express consent of the owner of the variety. (*Id.* at 7.)

"The PVPA extends patent-like protection to novel varieties of sexually reproduced plants . . . which parallels the protection afforded asexually reproduced

3

plant varieties . . . under Chapter 15 of the Patent Act." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 181 (1995). The PVPA restricts the ability of entities that do not have rights under a PVP certificate to take certain actions involving the protected variety. *See id.* The Act was designed to "provide developers of novel plants varieties with 'adequate encouragement for research, and for marketing when appropriate, to yield for the public the benefits of new varieties.'" *Id.* An exemption found at 7 U.S.C. § 2541(d) removes certain actions from the purview of the PVPA. The Parties dispute whether the language at § 2541(d) exempts Defendant's actions in this matter.

7 U.S.C. § 2541(a), titled "Acts constituting infringement," enumerates various acts that, if taken by a person or entity in regard to a protected variety, constitute infringement of the rights of the holder of the applicable PVP certificate. Infringing acts are limited to acts that occur in the United States, "or in commerce which can be regulated by Congress or affecting such commerce," within the time period when the PVP certificate is valid and active, and only where the purported infringer acts without authority and with requisite notice of the protected nature of the variety. *See* 7 U.S.C. §§ 2541(a), 2567. The prohibited acts are as follows:

> (1) sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it;
>
> (2) import the variety into, or export it from, the United States;
>
> (3) sexually multiply, or propagate by a tuber or a part of a tuber, the variety as a step in marketing (for growing purposes) the variety;
>
> (4) use the variety in producing (as distinguished from developing) a hybrid or different variety therefrom;
>
> (5) use seed which had been marked "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited" or progeny thereof to propagate the variety;
>
> (6) dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;
>
> (7) condition the variety for the purpose of propagation, except to the extent that the conditioning is related to the activities permitted under section 2543 of this title;

4

>(8) stock the variety for any of the purposes referred to in paragraphs (1) through (7);
>
>(9) perform any of the foregoing acts even in instances in which the variety is multiplied other than sexually, except in pursuance of a valid United States plant patent; or
>
>(10) instigate or actively induce performance of any of the foregoing acts

7 U.S.C. § 2541(a).  "[T]he PVPA gives the holder of a PVP Certificate rather broad exclusive rights." *Delta & Pine Land Co. v. Sinkers Corp.*, 177 F.3d 1343, 1347 (Fed. Cir. 1999).  However, subsection (d) provides language that arguably circumscribes the purview of the PVPA.  That subsection provides as follows:

>(d)  Acts not constituting infringement
>
>It shall not be an infringement of the rights of the owner of a variety to perform any act concerning propagating material of any kind, or harvested material, including entire plants and parts of plants, of a protected variety that is sold or otherwise marketed with the consent of the owner in the United States, unless the act involves further propagation of the variety or involves an export of material of the variety, that enables the propagation of the variety, into a country that does not protect varieties of the plant genus or species to which the variety belongs, unless the exported material is for final consumption purposes.

7 U.S.C. § 2541(d).  Defendant argues that subsection (d) exempts any act from the ambit of infringing acts under the PVPA unless there is evidence of *actual* propagation.  In other words, Defendant reads subsection (d) to require that actual propagation of the variety occur before any of the enumerated actions in subsection (a) constitute infringement.  Plaintiffs argue that subsection (d) "only applies when the seller is given express authority by the owner to s[ell] or market a protected variety prior to commencing such sale or marketing."  (Doc. 211 at 7.)  In other words, Plaintiffs read subsection (d) to exempt only those actions that are taken with express authority of the owner of the protected variety.

The Court rejects both suggested readings of subsection (d).  Defendant's interpretation would greatly circumscribe infringing acts under the PVPA.  For instance, a seed dealer could sell seeds to farmers without limitation and avoid PVPA

5

liability as long as there is no evidence that those seeds were actually propagated. That conclusion would be contrary to the apparent intent of the sweeping scope of § 2541(a). For instance, § 2541(a)(8) makes the mere stocking of a variety for any purpose also enumerated in § 2541(a) an infringing act. It would be incongruous to assume that Congress intended to make the mere stocking of a protected variety an infringing act if actual propagation was required for infringement. Since Defendant's reading of § 2541(d) would completely remove the mere stocking of a variety from the purview of § 2541(a), Defendant's reading of § 2541(d) would render § 2541(a)(8) superfluous. At the other extreme, Plaintiffs' reading of subsection (d) would be redundant of subsection (a), which states that an enumerated act constitutes infringement to the extent that it is "perform[ed] without authority." *Compare* 7 U.S.C. § 2541(a) and 7 U.S.C. § 2541(d). Because Plaintiffs' reading of § 2541(d) would only exempt those actions taken with consent of the owner—which is already a condition precedent to PVPA liability under § 2541(a)—Plaintiffs' interpretation would render § 2541(d) superfluous. Because the Court "must strive to give effect to every word in the statutory text," the Court rejects both Parties' interpretations of § 2541(d). *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013) (citing *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme")).

In the Federal Circuit, the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 644 (Fed. Cir. 2011). The PVPA and § 2541(d) are not models of clarity. *See Asgrow Seed*, 513 U.S. at 185-86. As the Court reads the language, certain clauses could modify several other clauses and determining which clause modifies which cannot be ascertained without context. For instance, it is not immediately clear whether "in the United States" is intended to modify "of a protected variety that is sold or otherwise marketed" or "with the consent of the owner." As such, the Court finds that the statutory language is ambiguous and thus turns to the canons of statutory construction.

6

"Beyond the statute's text, [the 'traditional tools of statutory construction'] include the statute's structure, canons of statutory construction, and legislative history." *Bull v. United States*, 479 F.3d 1365, 1376 (Fed. Cir. 2007) (citations omitted). "When the statutory language is ambiguous, legislative history can be useful in determining Congressional intent." *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013) (citing *In re Swanson*, 540 F.3d 1368, 1376 (Fed. Cir. 2008)). In light of the various rules and canons of statutory construction, the Court reads 7 U.S.C. § 2541(d) to exclude from the ambit of infringing acts any act that does not involve further propagation of any material of a protected variety that is capable of being propagated and that has been placed into the stream of commerce in the United States by or with the participation and consent of the owner.[1] Thus, once a variety is placed into the stream of commerce by the owner, § 2541(d) exempts acts taken in relation to that variety to the extent the acts do not *involve* propagation. Defendant proposes that "involves propagation" should be read to require actual propagation. Neither the statutory language nor any case cited by Defendant supports that reading. Instead, "involve" should be given its Merriam-Webster definition: "to have or include (someone or something) as a part of something."

The Court's reading of subsection (d) comports with the legislative history of the PVPA. When passed in 1970, the purpose of the PVPA was to "assur[e] the developers of novel varieties of sexually reproduced plants of exclusive rights to sell, reproduce, import, or export such varieties, or use them in the production (as distinguished from the development) of hybrids or different varieties, for a period of 17 years." H.P. Rep. No. 91-1605 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5082, 5082-83. Thus, the PVPA seeks to protect owners of varieties from the distribution of the variety for the purpose of production as distinguished from distribution for the purpose of development. Accordingly, it stands to reason that § 2451(d) would exempt any act that does not involve production—i.e. propagation. The Court is mindful, however, that defining

---

[1] Because this case does not involve the export of a protected variety, the Court declines to consider the final clause of § 2541(d).

7

"involve" too narrowly would eviscerate the intended purpose of the PVPA by removing from the PVPA's ambit many instances where the protected variety was distributed for the purpose of production but actual propagation did not occur or could not be demonstrated.

In light of the referenced interpretation of § 2541(d), the Court finds that Defendant's actions are not covered by the exemption at § 2541(d) because this case involved propagation. The evidence introduced at trial supports a finding that Defendant sold 320 bags of AGS 2000 to Edward Parker and that the seed from those bags were actually propagated, and thus involved propagation. Also, even if the jury relied solely on the transaction with Mr. Wofford, the evidence at trial showed that propagation was *involved* in that transaction. Mr. Wofford asked Mr. Wingate several questions regarding the various characteristics of the seeds and their crop-yielding potential, and Mr. Wingate offered to sell Mr. Wofford various products to help the seeds grow. Further, Mr. Wingate admitted at trial that he assumed that the seeds were to be planted. Accordingly, the Court finds that Defendant's actions as to AGS 2000 "involve[d] further propagation of the variety," and therefore do not fall within the exemption at § 2541(d).

## II. Plaintiffs' sampling method

Defendant asserts that, because Mr. Wofford stated that one bag that was tested for AGS 2000 only contained 55% of that variety and another bag that was tested for AGS 2000 contained 0% of that variety, "the jury's finding that 15 bags infringed can only be based on speculation and guesswork." (*Id.* at 6.) Plaintiffs argue that there is sufficient evidence that the bags sold by Defendant contained AGS 2000 based on the laboratory results and admissions by Douglas Wingate. (*Id.* at 10-11.)

Defendant's argument regarding the sampling method is plausible only to the extent it is established that the only fifteen bags that the jury found infringing were those sold to Zelotis Wofford. However, on a renewed motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to Plaintiffs and may only grant judgment as a matter of law if there is no legal basis upon which the

8

jury could rest its finding. Here, Douglas Wingate admitted that Defendant sold 320 bags of uncertified AGS 2000 seed. Also, Edward Parker testified that he purchased 320 bags of uncertified AGS 2000 seed from Defendant. Those admissions are sufficient to support a jury finding that at least 15 bags infringed Plaintiffs' PVPA rights.

### III. Authorized sales under 7 U.S.C. § 2541(a)

Defendant argues that the sale to Zelotis Wofford was authorized by Plaintiffs, and thus not infringing under 7 U.S.C. § 2541(a), because "Mr. Wofford was acting as plaintiff's authorized agent in initiating and consummating the transaction." (Doc. 204 at 6-7.) Plaintiffs state that Defendant's argument relating to Mr. Wofford acting as Plaintiffs' agent should not be considered because that argument was not "set forth in Defendant's trial oral motion for judgment as a matter of law." (*Id.* at 3.) Plaintiffs assert that, even if such argument is considered, the PVPA exempts instances where the seller has express authority from the owner of the variety, not instances where the buyer has such authority. (*Id.* at 7.)

7 U.S.C. § 2541 requires that an action involving a protected variety must be "without authority." As stated above, the Court cannot assume that the jury found that the only infringing bags were those involved in the transaction with Mr. Wofford. The evidence supports a jury finding that Defendant sold infringing bags of AGS 2000 to Edward Parker, and Mr. Parker was clearly without authority to engage in that transaction. Also, even if the only infringing sales were those to Mr. Wofford, § 2541(a) does not exempt sales to an authorized agent. Instead, § 2541(a) makes all enumerated acts infringing to the extent they are "perform[ed] without authority." The evidence supports a finding that Defendant violated the PVPA by making sales to Mr. Wofford because Defendant did not have the authority to transfer title or possession of the infringing bags at all, without regard to the identity or status of the purchaser. The fact that Plaintiffs caused Mr. Wofford to engage in the transaction does not legitimatize Defendant's otherwise voluntary inappropriate and infringing conduct.

9

### IV. Willfulness under the PVPA

In the Court's previous order on Defendant's Oral Motion for Judgment as a Matter of Law, the Court held that the jury could find a willful violation of the PVPA by clear and convincing evidence based on Mr. Wingate's statements that he knew that the AGS 2000 he was selling was certified and some of the best on the market, and the fact that informational booklets about AGS 2000 were found on Defendant's property. (Doc. 181 at 12.) Defendant argues that the cited evidence is insufficient to support the jury's finding of willfulness. However, other evidence supports the jury's finding of willfulness. For instance, Mr. Wingate admitted that he held himself out as a "seedsman"—a person who makes his living selling seeds. He was a licensed seed dealer and a member of the Georgia Crop Improvement Association ("GCIA"). He sold other bags of PVPA-protected varieties in a manner that did not violate the PVPA—that is, in accord with the PVPA license and in the properly-marked bags.

Notwithstanding Defendant's contention that Mr. Wingate's testimony and the presence of informational booklets at his place of employment demonstrate that Defendant honestly but erroneously believed that the seed was certified, the Court cannot make credibility determinations while considering a renewed motion for judgment as a matter of law. In light of the evidence suggesting Mr. Wingate's knowledge about protected varieties of seeds and membership with the GCIA, and the evidence suggesting that Defendant sold protected varieties properly and in a manner that did not violate the PVPA, the jury could have found that Mr. Wingate's testimony that he believed the seeds to be certified was not credible. For those reasons, and based on the evidence discussed above, the Court finds that the jury's finding of willfulness is supported by clear and convincing evidence.

### V. Speculative nature of damages award

Defendant argues that the jury's damages award cannot be sustained because it is not supported by the evidence. (Doc. 204 at 13.) Defendant asserts that the evidence was undisputed that Plaintiff "AGSouth received an established royalty on AGS 2000 wheat at $1.25/bag" and "no evidence was presented upon which the jury could have

10

found a reasonable royalty of $125/bag." (*Id.*) Plaintiffs argue that the reasonable royalty established by the jury is supported by the expert testimony presented at trial. (Doc. 211 at 19-20.)

"A jury's decision with respect to an award of damages 'must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.'" *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1072 (Fed. Cir. 2003) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580 (Fed. Cir. 1992)). Plaintiffs presented the expert testimony of Donald Davis. Mr. Davis' analysis incorporated all fifteen factors that bear on a determination of a reasonable royalty as set out by *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Mr. Davis calculated the reasonable royalty by considering the *Georgia-Pacific* factors in relation to a hypothetical negotiation between Plaintiffs and Defendant. Although the jury found the reasonable royalty to be substantially less than the reasonable royalty calculated by Mr. Davis, the Court finds that the jury's award was not "grossly excessive or clearly unsupported by the evidence." *See State Contracting*, 346 F.3d at 1073 (upholding a jury's damages award under similar circumstances).

**VI. Punitive nature of damages award**

Lastly, Defendant argues that the jury's award was punitive in nature and therefore improper under the PVPA. (Doc. 204 at 15-16.) Plaintiffs argue that Defendant's argument about the punitive nature of the damages award was waived because it was not raised in Defendant's oral motion for judgment as a matter of law. (Doc. 211 at 20.) Plaintiffs assert that, even if not waived, Defendant's argument fails because the expert's testimony supported the jury award even though the award was less than the reasonable royalty calculated by the expert. (*Id.*)

To the extent that Defendant's referenced argument was not waived, the Court finds that the jury's damages award was not impermissibly punitive. Notwithstanding Defendant's assertion that the reasonable royalty found by the jury was the sum of the established royalty for AGS 2000, $1.25 per bag, multiplied by 100, the jury's reasonable

11

royalty finding was supported by Mr. Davis' calculation of a reasonable royalty in a hypothetical negotiation in light of the *Georgia-Pacific* factors. The $1.25 per bag royalty is the royalty charged by Plaintiffs when all of their terms and conditions are met. Here, Defendant admitted that the seeds sold as AGS 2000 to Zelotis Wofford were not 100% AGS 2000. Also, the evidence suggested that the bags of AGS 2000 sold by Defendant were not properly marked, and did not otherwise conform to the requirements imposed by Plaintiffs as owners of AGS 2000. Mr. Davis' hypothetical negotiation was premised on the actual conditions under which Defendant sold the brownbag AGS 2000, not the typical conditions that result in a royalty of $1.25 per bag. Because the Court may only grant a renewed motion for judgment as a matter of law in instances where there is "no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," and Mr. Davis' testimony provides such legally sufficient evidentiary basis, the Court concludes that the jury's damages award was not impermissibly punitive.

## CONCLUSION

For the foregoing reasons, Defendant's Post-Trial Motion for Judgment as a Matter of Law (Doc. 204) is **DENIED.**

**SO ORDERED**, this   20th   day of May 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**